**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL PENSION FUND,** | ) | |
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL WELFARE FUND,** | ) | |
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL RETIREE HEALTH** | ) | |
| **AND WELFARE FUND, and CATHERINE** | ) | **Case No. 21 C 3771** |
| **WENSKUS, not individually but as** | ) | |
| **Administrator of the Funds,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **AVERY & PRYOR CONSTRUCTION LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Health & Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Chicago Funds, (collectively the "Chicago Funds"), by their attorneys Patrick T. Wallace, Amy Carollo, G. Ryan Liska, Katherine C.V. Mosenson and Sara S. Schumann, and for their Complaint against Avery & Pryor Construction LLC, state:

## COUNT I
### (Failure to Pay Benefit Contributions)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

1

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Chicago Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Chicago Funds, and has been duly authorized by the Chicago Funds' Trustees to act on behalf of the Chicago Funds in the collection of employer contributions owed to the Chicago Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Chicago Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Chicago Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Avery & Pryor Construction LLC, (hereinafter "Avery & Pryor" or "Company"), does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a).  The Union and Avery & Pryor have been parties to a series of collective bargaining agreement, the most recent of which became effective June 1, 2017 ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to the Laborers' Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7.     The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Industry Advancement Fund (the "IAF"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the CARCO Industry Advancement Fund ("CARCO"), the Underground Contractors Association ("UCA"), and the  Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those funds.

8.     The Agreement and the Funds' respective Agreements and Declarations of Trust obligate AVERY & Pryor to make contributions on behalf of its employees covered by the Agreement, and to submit monthly remittance reports in which Avery & Pryor, *inter alia*, identifies the employees covered under the Agreements and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the

Agreement, and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

9.     The Agreement and the Funds' respective Agreements and Declarations of Trust require Avery & Pryor to submit the books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.     The Agreement requires Avery & Pryor to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Avery & Pryor has:

a.     failed to submit reports and/or pay all contributions to Plaintiff Pension Fund for April 2021 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

b.     failed to submit reports and/or pay all contributions to Plaintiff Welfare Fund for April 2021 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

c.     failed to submit reports and/or pay all contributions to Retiree Welfare Fund for April 2021 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

d.     failed to submit reports and/or pay all contributions to Laborers' Training Fund for April 2021 forward, thereby depriving the Laborers' Training Fund of contributions, income

and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

e.      failed to submit reports and/or pay all contributions owed to one or more of the other affiliated funds identified in Paragraph 7 above for April 2021 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

f.      failed to obtain and maintain a surety bond.

12.     Avery & Pryor's actions in failing to submit timely reports and contributions and obtain a surety bond violate Section 515 of ERISA, 29 U.S.C. §1145 and Section 301 of the LMRA, 29 U.S.C. §185.

13.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Avery & Pryor is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs, a surety bond, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Avery & Pryor Construction LLC as follows:

a.      ordering Avery & Pryor to submit benefit reports and pay all contributions for April 2021 forward and to submit to an audit upon demand;

b.      entering judgment in sum certain against Defendant Avery & Pryor on the amounts due and owing as pled in the Complaint, and pursuant to the amounts revealed as owing pursuant to the April 2021 forward reports, and audit, if any, including contributions, interest,

liquidated damages, bond payments, audit costs, and attorneys' fees and costs;

        c.      ordering the Company to obtain and maintain a surety bond; and

        d.      awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

## COUNT II
### (Failure to Pay Union Dues)

14.     Plaintiffs reallege paragraphs 1 through 13 as though fully set forth herein.

15.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

16.     Dues reports and dues contributions are due by the 10th day following the month in which the work was performed. Dues reports and dues contributions which are not submitted in a timely fashion are assessed liquidated damages.

17.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company failed to submit Union dues reports and dues that were or should have been withheld from the wages of its employees performing covered work for the period of December 2020 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance.

18.     Pursuant to the Agreement and Federal Common Law, Avery & Pryor is liable to the Funds for the unpaid Union dues, as well as liquidated damages, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and

such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Avery & Pryor Construction LLC as follows:

a.    ordering Avery & Pryor to submit dues reports and pay all dues for the time period of December 2020 forward;

b.    ordering Avery & Pryor to submit its books and records to an audit upon demand to determine dues contributions compliance;

c.    entering judgment in sum certain against Avery & Pryor on the amounts due and owing pursuant to the December 2020 forward dues reports, and on any amounts found due and owing pursuant to the audit, including dues, interest, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs; and

d.    awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

## COUNT III
### (Failure to Pay Benefit Contributions Revealed as Delinquent Pursuant to an Audit)

19.    Plaintiffs reallege paragraphs 1 through 18 as though fully set forth herein.

20.    An audit of Avery & Pryor's books January 1, 2018 through November 30, 2020, revealed that the Company performed covered work during the audit period, but that notwithstanding the obligations imposed by the Agreement, and the Funds' respective Agreements and Declarations of Trust, Avery & Pryor:

a.    failed to report and pay contributions in the amount of $0.16 owed to CAICA for the period of January 1, 2018 through November 30, 2020, thereby depriving the

CAICA of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

b.      failed to report and pay contributions in the amount of $0.34 owed to Laborers' District Council Labor Management Committee Cooperative ("LMCC") for the audit period of January 1, 2018 through November 30, 2020, thereby depriving the LMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

c.      failed to report and pay contributions in the amount of $0.14 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit of January 1, 2018 through November 30, 2020, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

A true and accurate copy of the audit and Summary of Amounts Owed are attached hereto as Exhibits B and C, respectively.

21.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company is liable for the costs of any audit which reveals unpaid contributions.  Accordingly, the Company owes the Funds $1,312.50 in audit costs for the audit for the period of January 1, 2018 through November 30, 2020.

22.     The Company's actions in failing to submit payment upon the audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

23.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement, and the Funds' respective Trust

Agreements, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, audit costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Avery & Pryor:

a.      entering judgment in sum certain in favor of the Funds and against Avery & Pryor on the amounts due and owing pursuant to the audit for the period of January 1, 2018 through November 30, 2020, including contributions, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT IV
### (Failure to Pay Union Dues Revealed as Delinquent Pursuant to an Audit)

24.     Plaintiffs reallege paragraphs 1 through 30 as though fully set forth herein.

25.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

26.     Notwithstanding the obligations imposed by the Agreement, Avery & Pryor performed covered work during the audit period of January 1, 2018 through November 30, 2020, and the Company failed to withhold and/or submit payment of $16.69 in union dues that were or

should have been withheld from the wages of employees for the period of January 1, 2018 through November 30, 2020, thereby depriving the Union of information and income. *See* Exhibit B.

27. Pursuant to the Agreement, the Company owes liquidated damages on all late or unpaid dues as revealed by the audit for the period of January 1, 2018 through November 30, 2020, plus audit costs, interest, liquidated damages, and reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Avery & Pryor Construction LLC:

a. entering judgment in sum certain in favor of the Funds and against the Company on the amounts due and owing pursuant to the audit for the period of January 1, 2018 through November 30, 2020, including dues, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

July 15, 2021                                      Laborers' Pension Fund, et al.

                                                  By: /s/ Amy Carollo
                                                      Amy Carollo

Amy Carollo
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8053

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _____ Avery & Pryor Construction LLC ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. In response to the Union's request for recognition as the majority or Section 9(a) representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA, as amended, for the employees now and hereinafter employed under the terms of this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union's having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension hereof, without voiding approval from the Union. The Employer shall abide by this Agreement, and all extensions hereof, provided that it employs at least one Laborer at any time during the term of this Agreement or the term of any extension hereof.

2. Labor Contract. The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. Total economic increase. The Employer agrees to pay its employees a total economic increase of $1.75 per hour effective June 1, 2010; $1.80 per hour effective June 1, 2011; and $1.85 per hour effective June 1, 2012, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2010, the minimum wage rate shall be $35.20 per hour.

4. Checkoff Deductions and Remittances. The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorization deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which each deduction were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue standard.

5. Work Jurisdiction. This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. Subcontracting. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations at all tiers of its subcontractors for payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. Fringe Benefits. The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. Contract Enforcement. All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the work force at all job sites.

9. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. Termination. This Agreement shall remain in full force and effect from June 1, 2010 (unless dated differently below) through May 31, 2013, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. Execution. The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile signatures on this Agreement as if they were the original signatures.

Dated: June 26th , 20 12 .

ACCEPTED:

Laborers' Local Union No. _____

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: CAICA *

Avery & Pryor Construction LLC
FEIN No. _____

By: Benjamin Avery President
(Print Name and Title)

_____
(Signature)

730 N. Mason
(Address)

Chicago, IL 60654
(City, State and Zip Code)

(773)622-1608   773-322-1773
(Telephone)(Fax)

Effective June 1, 2010    WHITE - LOCAL UNION    •    CANARY - TRUST FUND    •    PINK - DISTRICT COUNCIL    •    GOLD - EMPLOYER

Exhibit A



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8209 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _Avery & Pryor Construction LLC_ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority or Section 9(a) representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA, as amended, for the employees now and hereinafter employed under the terms of this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union's having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension hereof, without written approval from the Union. The Employer shall abide by this Agreement, and all extensions hereof, provided that it employs at least one Laborer at any time during the term of this Agreement or the term of any extension hereof.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $1.75 per hour effective June 1, 2010; $1.80 per hour effective June 1, 2011; and $1.85 per hour effective June 1, 2012, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2010, the minimum wage rate shall be $35.20 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If The Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDCLMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2010 (unless dated differently below) through May 31, 2013, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations, In the absence of such timely and proper notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile signatures on this Agreement as if they were the original signatures

Dated: _Sept. 7 th_ , 20 _12_ .

ACCEPTED:

Laborers' Local Union No. _4_

By: _Fox P. Connell_

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: _AFCA#_

_Avery & Pryor Construction LLC._
(Employer)

FEIN No.: ███████████

By: _Benjamin Avery_ _President_
(Print Name and Title)

_Benjamin Avery_
(Signature)

_306 N. Mason_
(Address)

_Chicago, IL 60644_
(City, State and Zip Code)

_(773) 627-9890_ _(773) 375-1773_
(Telephone/Telefax)

Effective June 1, 2010 • WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

RECEIVED JUL 0 2 2012

AVERY & PRYOR CONSTRUCTION, LLC
CHLAB-1120-04405
Acct # 35294
January 1, 2018 to November 30, 2020
WITHOUT SOCIAL SECURITY NUMBERS

Exhibit B

## Calibre CPA Group, PLLC

Page 1

Chicago Laborers
Avery & Pryor Construction
    Case: **CHLAB-1120-04405**
    Audit Period: **1/1/2018 - 11/30/2020**
Fiscal Year End: **May**

Reconciliation of Differences Per Year

Manager: **Tim Kalnes**
Auditor: **Francesca Malizia**

| Findings | Fiscal Year Ending: | May 2019 | May 2018 | Total |
|---|---|---|---|---|
| Dollars Not Reported | | 445.12 | | 445.12 |
| Hours Not Reported (Dues) | | | 2.00 | 2.00 |
| **Dollar Amount Due** | | | | |
| CAICA | | | 0.16 | 0.16 |
| LDCLMCC | | | 0.34 | 0.34 |
| LECET | | | 0.14 | 0.14 |
| Dues | | 16.69 | | 16.69 |
| **Total** | | **16.69** | **0.64** | **17.33** |

Total Amount Due    **17.33**

Local: **Chicago Laborers**
Contractor: **Avery & Pryor Construction**
Case: **CHLAB-1120-04405**

# Calibre CPA Group, PLLC

Page 2

**Details Report**

| Contract: CAICA |
|---|

Source: **Hours Worked**

| Employee Findings | | 06/2017 | 07/2017 | 08/2017 | 09/2017 | 10/2017 | 11/2017 | 12/2017 | 01/2018 | 02/2018 | 03/2018 | 04/2018 | 05/2018 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MATTHEWS, ANWAR | XXX-XX-XXXX | | | | | | | | | | | | 2.00 | 2.00 |
| **Total** | | | | | | | | | | | | | | 2.00 | 2.00 |

| Rate Table | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CAICA | 0.0800 | | | | | | | | | | | | 0.16 | 0.16 |
| LDCLMCC | 0.1700 | | | | | | | | | | | | 0.34 | 0.34 |
| LECET | 0.0700 | | | | | | | | | | | | 0.14 | 0.14 |
| **Total** | | | | | | | | | | | | | 0.64 | 0.64 |

Local: **Chicago Laborers**
Contractor: **Avery & Pryor Construction**
Case: **CHLAB-1120-04405**

**Calibre CPA Group, PLLC**

Page 3

**Details Report**

Contract: **CAICA**

Source: **Wages Paid**

| Employee Findings | | 06/2018 | 07/2018 | 08/2018 | 09/2018 | 10/2018 | 11/2018 | 12/2018 | 01/2019 | 02/2019 | 03/2019 | 04/2019 | 05/2019 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LOMAX, PEAREASE R | xxx-xx-xxxx | | 445.12 | | | | | | | | | | | 445.12 |
| **Total** | | | **445.12** | | | | | | | | | | | **445.12** |

| Rate Table | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 0.0375 | | 16.69 | | | | | | | | | | | 16.69 |
| **Total** | | | **16.69** | | | | | | | | | | | **16.69** |

**LABORERS' PENSION & WELFARE FUNDS**  7/12/21

**SUMMARY OF AMOUNTS OWED**

EMPLOYER  Avery & Pryor Construction, LLC          CODE  35294

Audit Period: 1/1/18-11/30/20

| PERIOD | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | CAICA | RATE | LMCCC | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | - | | - | | - | | - | | | - | | - | | - | | - |
| 6/1/17-5/31/18 | 2.00 | - | | - | | - | | - | | | 0.16 | 0.08 | 0.34 | 0.17 | 0.14 | 0.07 | 0.64 |
| 6/1/18-5/31/19 | | - | | - | | - | | - | | 16.69 | - | | - | | - | | 16.69 |
| | | - | | - | | - | | - | | | - | | - | | - | | - |
| | | - | | - | | - | | - | | | - | | - | | - | | - |
| | | - | | - | | - | | - | | | - | | - | | - | | - |
| | | - | | - | | - | | - | | | - | | - | | - | | - |
| SUBTOTAL | 2.00 | - | | - | | - | | - | | 16.69 | 0.16 | | 0.34 | | 0.14 | | 17.33 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | 1.67 | 0.02 | | 0.03 | | 0.01 | | 1.73 |
| 20% LIQUIDATED DAMAGES | | - | | - | | - | | - | | | | | | | | | - |
| AUDIT COSTS | | 446.25 | | 433.13 | | 433.12 | | | | | | | | | | | 1,312.50 |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | - |
| ACCUM. INTEREST | | | | | | | | | | | 0.06 | | 0.13 | | 0.05 | | 0.24 |
| TOTAL DUE | | 446.25 | | 433.13 | | 433.12 | | - | | 18.36 | 0.24 | | 0.50 | | 0.20 | | 1,331.80 |

Exhibit C